Good morning. May it please the court, Nathaniel Smith for appellants, Daniel Isaacs, and Peter Gleason. Lawyers are not their clients. They're not bonding companies guaranteeing performance of their client's obligations in the law. Lawyers are advocates with complex obligations and duties running both to the court and to their clients. The relevant rule for this appeal governing lawyers' conduct is derived from Rule 37 of the Federal Rules of Civil Procedure. That rule essentially holds as follows, that if a lawyer personally disobeys a court order or advises a client to do so, then that lawyer is properly subject to sanctions. This rule of law, it's not disputed, is dispositive of the issues on this appeal. Neither Daniel Isaac nor Peter Gleason personally disregarded a lower court order and they did not advise their client to do so. In fact- Let me ask you about disregarded, counsel. So a lawyer has, as you noted, obligations to both their client and the court, which can be tricky. But a lawyer has a very clear role in discovery. So it is insufficient, I think it's well established, that it's insufficient for a lawyer to say, hey client, can you look through your stuff and see if you have anything responsive, right? But the lawyer has an obligation to supervise responses to discovery and to ensure that the client is complying, right? Yes, I agree that the lawyer has an obligation to assure but not ensure that the client will be performing its obligations. But if a lawyer comes to have knowledge or even a strong suspicion that the client is not complying, doesn't the lawyer have an obligation, doesn't the lawyer's obligation to the court come into play?  So here we have on June 1st, I think it is, the defendants turning over 60 some odd emails that they received from third party subpoenas, suggesting that in fact the plaintiff had responsive documents or responsive materials that had not been disclosed. And so what I would expect as counsel is that counsel would then convene with their client and say, here's a problem, let's sit down with your computer and go through your email accounts. Let's see whether, you know, you have these emails in your accounts, whether there are other emails. It doesn't look like that happened and I'm not sure why that would not be a violation of the court's order. Respectfully, Your Honor, the idea that it didn't look like that happened is not the governing standard. Okay. And what evidence do we have that that did happen? If a lawyer is going to be sanctioned for a lawyer's misconduct, then the lawyer needs to be confronted with specific facts about what the lawyer did or should have done. Here, there were repeated failures to meet the court's obligation, the court's requirement. And at some point, if this was due to the client, doesn't the lawyer have a duty to say, I can no longer represent this person? That happens too. And the court clearly said you had a difficult client and that's why the sanctions were frankly as low as they were. But a statement that after all, you could have done more is what the court was doing. Your Honor, I'd like to respond to that. There are three orders at issue here. The first one was complied with, which was that a May 24 order, the plaintiff shall serve her responses on before May 30th. That was complied with. There's really no question about that. Well, let me ask, that order also cautioned, quote, future failures to meet the discovery deadline set for in the party's case management plan or this court's rules of individual practice will not be tolerated. Was there compliance with the case management plan? It doesn't appear to be the case. There are only three orders that I'm aware of in this record that are relevant to this question. It's a May 24 order, a June 2 order, and a July 15 order. There's been no suggestion that there were other orders out there. No, I mean, but the May 24 order doesn't just say serve responses to the interrogatories and request for production. It also says future failures to meet with the discovery deadline set forth in the case management plan. Yes, I think there were problems with the timing of the responses because the lawyers were having a difficult time getting information from the client. That is certainly true. But to say that it looks like the lawyers didn't do their job and go to their client and say, we need you to comply, that's the fundamental problem with this case is that there's no basis for anybody saying that Mr. Isaacs or Mr. Gleason didn't do their job and go sit down with their client. But in fact, in the July 22 conference, they told the lower court that they went to the client's house for the purposes of actually going for her computer themselves. And when she said, I'm not giving you the records, they promptly advised the court that they were discharged and they moved to withdraw. What more can a lawyer do? How long did that take after they became aware of the shortfalls? It was as soon as the client discharged them, because she was not going to turn over the records that she found to be embarrassing, they immediately informed the district court by letter. The letter is dated. I'm talking about the gap between, I'm talking about when did that finally happen, that counsel went and said, I thought that was very near to that hearing. It was just a few days before they were discharged that they said they finally did that. July 15th, there was an order, produce documents by the 22nd. Immediately after July 15th, both lawyers made efforts as they stated. What happened between June 1st and July 15th? Between what and what? June 1st and July 15th. Well, I mean, there were communications between the lawyer and the client, but there's no record of them. Isaacs and Gleason, mostly Isaacs, said that he himself personally repeatedly attempted to get relevant information and documents from the client. That's their obligation. But where's the evidence? Where's the admissible evidence of wrongdoing here that says that they failed to communicate with their client? Or told the client, well, the district court said you're supposed to do this, but you can ignore them. That's not in the record, and you can't assume that that's in the record. You can't assume that that occurred. Lawyers' reputations are at stake. Their good names are at stake here. So at the very least, you would expect admissible evidence to be presented showing that the lawyer did something wrong. That didn't happen here. There was atmospherics. It looked like something happened. Yes, the plaintiff was not being as forthcoming as she should have been, okay? But that's, lawyers are not their clients. They don't guarantee that the client's going to do what the client's supposed to do. You can sanction a lawyer, but you've got to sanction a lawyer for misconduct. I see my time has expired. Good morning, your honors. Brian Asher from Gibson Dunn for defendant Mr. Dillon. May it please the court. Nothing Mr. Smith said changes the fact that the record in this case amply supports the district court's sound exercise of its discretion in awarding modest, very modest sanctions for appellant's violation of discovery orders. Mr. Smith would have you believe that the appellant's lapses, missed deadlines, and failure to produce critical documents they knew existed, as the panel points out since June 1st, he'd have you believe they were just sloppiness and not violations of court orders. This is false. The district court's May 24th order of 2022 and the district court's June 2nd, 2022 orders were clear. As the district court found, appellants violated both of those orders. The district court did not abuse its discretion in awarding sanctions as a result of these violations. The district court here got it right. It did what this court instructs district courts to do. It considered the full record in the case. It considered all the missed deadlines, all the misconduct. It weighed the Aguiwal factors and found each favored sanctions. And it awarded the least severe sanctions here that were available. Just a fraction of what Mr. Dillon requested, which was $50,000. And as the court found, far less than the cost Mr. Dillon incurred as a result of the misconduct. And that's at the decision at 24, which is page 24 of the special appendix. Can I just ask, the May 24th order required responses to the initial interrogatories and requests for production. And there was compliance with that by May 30th, right? A day late or, but around May 30th, those responses were given. Am I right about that? Almost right, Your Honor. There was not compliance with the May 24th order. The May 24th order said that responses, which were already weeks late, they were due on April 18th. We had to write to the court to ask that the plaintiff and appellants be compelled. And the court ordered the date that appellants requested, May 30th would be the date that responses to requests for production and interrogatories would be due. The request for production responses were not served on that date. On May 31st, the day after, so we now have a violation of a court order. Has already occurred by May 30th. But more broadly, was that order also violated by the second sentence in it, it says the court will not tolerate any further failures to comply with the party's case management plan. Was there a case management plan in place that required the documents themselves to be produced by June 30th? There was a case management plan in place at the time. It did not speak to the specific date for production of documents. However, on May 31st, when the requests for production were not served, we wrote another letter to the court to ask for help again, to plead for help. These are the most heinous allegations that a defendant can face. And Mr. Dillon was trying to clear his name with every resource we had. And the court issued the order on June 2nd after they belatedly served their responses to the request for production. And the June 2nd order said, directed appellants to comply with all deadlines and gave them another warning that failure to do so could result in sanctions. And shortly after the June 2nd order, appellants agreed to a June 30th date for substantial completion of document production in response to the first set of requests. And they failed that deadline completely. No, not a single email was produced by June 30th. Not a single email was produced in this case ever. And as the panel is aware from the record, on June 1st, with at least 60 emails to and from plaintiff going to the core allegations in this case, emails that the court found questioned the veracity of the allegations and undermined plaintiff's allegations. Those emails were never produced. Not a single email was ever produced from the plaintiff. So we had the 60 emails that we only got from third parties. We had to go and subpoena third parties to get those. So these few people had 60 emails with the plaintiff about the allegations in the case, calling them into question. We don't know how many else there were because what we know from the record is that on that July 15th hearing, Appellant Isaacs informed the court that he hadn't been aware of any emails and was just then starting to look. So... And on June 30th, there are only 49 pages produced, despite the fact that plaintiff should have been, plaintiff's lawyers should have been aware of the emails that had not been produced. Correct, Your Honor. The emails from the third parties were provided to appellants on June 1st. By June 30th, they were well aware, as the district court found, that these emails existed and they produced none on June 30th. Can you tell me what the lawyer should have done, given that everything you say is true, that it was the client who wouldn't give him these things? What should the lawyer then have done? So I will say, Judge Calabresi, the record does not show that it was the client that wouldn't give the lawyer these emails. The only reference to documents that the client would not turn over to the lawyers in the record are three boxes of hard copy documents that appellants discussed at the July 28th hearing. And what we're talking about here are emails. So when on June 1st... Well, first of all, I would contend the appellant should have known about the existence of emails before they filed the case. This should have been something they looked into. But by June 1st, we provided them with ample record that the plaintiff was having substantial emails about the allegations in this case. Appellants sat through depositions where we used those emails to question witnesses. So they should have gone to the plaintiff immediately and required that they get access and that the plaintiff produces these emails. But they didn't say a word. They didn't ask for help from the court. And on June 30th, they purported to comply with the production deadline. But could you answer my hypothetical? Suppose it is the client who is refusing and making it difficult for the lawyer. That may not... You're arguing that that isn't quite the case, but the other side says it is. What should the lawyer do then? If the client will not cooperate at all with the lawyer to produce documents, which again, I don't think the record shows. But in that hypothetical, I think that if the lawyer cannot work that out with their client and there is a document production deadline upcoming, the lawyer needs to take steps to come to the court and ask the court for help and make clear that there is a breakdown of communication with the client and an issue that requires an extension or requires some other intervention. But they didn't say a word. They missed the deadline. They made a token production that didn't include a single email. Despite the fact they knew there were several. And that was a deadline that came about after the court's June 2nd order that said that the court really means it. Appellants must comply with the deadlines or sanctions will issue. And I just want to step back for a little bit of context here because what makes what happened here more aggravating and unfortunate is the nature of this case. These are not routine discovery violations in a case having to do with a contract or a loan. Appellants made... How is that relevant though, counsel? I understand why it's relevant to your client, obviously. I don't understand how it's relevant because there's a lot of talk in your briefing about failure to do initial investigation, those sort of things. I understand it. I understand the frustration. But how is that relevant to the core question on this appeal, which is did the lawyers individually violate an order of the court sufficient to impose Rule 37 sanctions? I would say because the case on this circuit instructs district courts to look at the full record and the instructive conduct in the case. And I think the full record in this case includes the allegations at issue and the core relevance of the documents that were not produced by the deadline after the court ordered them to be produced. I would just say there's no violation of the... Sorry, there are clear violations of the court orders here that were at issue. There was the May 24th order, which again was violated by failure to serve the responses on time. We had to go back to the court in order to get those responses. My friend on the other side said that the May 24th order was complied with. Again, unequivocally not true. The June 2nd order, again, instructed appellants to comply with all deadlines without court intervention and constituted a second warning. They did not comply with that deadline. The court carefully considered all of the argue-all factors here, found that the noncompliance was willful, found that lesser sanctions weren't available here, and frankly, the court picked, as it pointed out, the least severe sanctions possible. Finally, I just want to address something that came up in the papers, which is appellant's argument that a hearing should have taken place here. There's no requirement for an evidentiary hearing here. The case law cited by appellants themselves confirms that. The court here, the district court, held two hearings regarding defendant's appellant's discovery misconduct. The district court here issued three increasingly stern warnings regarding appellant's misconduct and violation of court orders. There were pre-motion letters before the motion for sanctions, and there was, of course, full briefing on the motion for sanctions. There was no shortage of process here. I see my time is up. I thank the court for its time. Thank you. I'd like to address two things. In the record, the joint appendix, page 91, defense counsel wrote on June 1 that they had received the responses to the documents and interrogatories that were due pursuant to the May 24 order, and they withdrew their request for a conference. So there was compliance with that order. I'm not making it up. It's at page 91. They admit it. The other thing that's very, very important for the court to understand is these are these emails. The emails, the critical documents that the defendants say the plaintiff never turned over. The plaintiff filed this case anonymously. It's sexual abuse allegations. After she filed, her name was outed on the internet by some website troll, Zeus's News. And once that happened, and her name was plastered all over the internet, after the action had been commenced, her siblings and her started engaging in a lot of emails. Pardon me. It's all part of this sealed joint appendix. Excuse me. And those are the emails that the defendants say are this critical evidence. They're not critical evidence. It's not evidence really of anything. But nevertheless, these were some of the things that the lawyers tried to get the plaintiff to turn over, among other things. And it's laid out in the record. They both spoke to this very issue about their efforts to try and secure compliance. This is in the joint appendix 133 through 42 and 160 through 163. Both lawyers explaining their efforts to try and secure compliance with their discovery obligations. And the client ultimately saying, you know what? I want to drop my case. I'm done. What's a lawyer to do? Thank you. We'll take the matter under advisement.